UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARTI KLUTHO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV1065 CDP |
| ) | |
| FOURTH FLEET FINANCIAL, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Fourth Fleet Financial mailed Marti Klutho a letter stating that she had been pre-qualified for a loan to refinance her lease on her vehicle. Klutho filed this purported class action claim, alleging that Fourth Fleet Financial violated her rights under the Fair Credit Reporting Act because it obtained information about her credit without her consent in order to send her the letter. Fourth Fleet Financial has moved to dismiss, arguing that it was allowed to access Klutho's credit information because the letter constituted a "firm offer of credit" as defined by the Act. I conclude that the offer here was so vague that it lacked any value to a consumer, and so Klutho has stated a claim. I will therefore deny the defendant's motion to dismiss.

## I. Background

The complaint alleges that in March, 2007, Klutho received a "prescreened" promotional letter from Fourth Fleet Financial. Klutho alleges that Fourth Fleet Financial accessed her credit report without her consent to obtain the information for this prescreening.

The front side of the letter states in bold print: "You are pre-qualified to refinance your lease! Act Now: Buyout your leased vehicle today and reduce your monthly payment with no out of pocket expenses. Don't delay - this offer is good through 05/22/2007." The body of the letter states:

> Want to keep the car, truck or SUV you're currently leasing? Did you know that you can refinance your lease before it ends, eliminating the hassles that come with refinancing your lease by yourself or through the dealer? Don't let that large payment due at the end of your lease stop you from owning the car you want.
>
> **Now there's a better option for lease refinancing**
> We will put you on the road to owning your leased car without wasting your time, or your money. Best of all, there's none of the problems that often come with unpredictable and unexpected end-of-lease charges, and none of the aggravation that comes with finding and buying another car.
>
> Just complete one simple application and we'll offer you <u>the best loan at the best possible rate</u>. Better yet, <u>we'll guide you through our simple lease refinancing process</u>, and even offer you special products that can save you even more, and protect your investment.
>
> **Fast and Easy**
> Our friendly, experienced loan consultants will help you through every step, finding you the best loan, explaining your options and

answering your questions.  We will even handle all of the loan and legal paperwork – so you don't have to.  In less with [sic] 24 hours you'll have your answer, best of all, our loan approval rates are among the highest in the industry.  In most cases <u>we can even finance 100%</u> of the loan, with sales tax and title fees included.

**Why Fourth Fleet?**
Fourth Fleet Financial is on [sic] the only institution focused solely on lease refinancing.  Our only goal is to help you find the <u>lowest monthly payment, the best interest rate and the right payment terms</u> for your needs.  We also offer the <u>best extended warranty available</u>, and other products designed to meet your needs.  And because we'll handle all of the details of refinancing a lease from beginning to end, <u>you won't find a simpler, smoother lease refinancing process anywhere</u>.

**Act now, before your offer expires!**
Simply visit our website at **www.fourthfleet.com** and complete our online application, or give us a call toll free at **1-866-456-4970** (Monday - Friday, 8am - 7pm CST) and we'll help you complete your application over the phone in minutes.  Do it today, and discover how easy financing your leased vehicle can be.

A box at the bottom of the front side of the letter contains a notice that reads, "You can choose to stop receiving pre-screened offers of credit from this and other companies by calling toll-free 1-888-567-8688.  See PRE-SCREEN & OPT-OUT NOTICE on the reverse side of this letter for more information."  The reverse side of the letter contains a paragraph that states, in relevant part:

> PRE-SCREEN & OPT-OUT NOTICE: This pre-screened offer of credit is based on information in your credit report indicating that you meet certain criteria.  This offer is not guaranteed if you do not meet our criteria, including the ability to provide collateral meeting loan requirements.

The mailer does not specify the APR or specific terms of the loan; it does not guarantee a minimum loan amount.

II.     **Motion to Dismiss Standard**

Fourth Fleet Financial has moved to dismiss under Rule 12(b)(6). The purpose of such a motion is to test the legal sufficiency of the complaint. The Court must assume all factual allegations of the complaint are true and must construe those allegations in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989). "The motion will succeed or fail based upon the allegations contained in the face of the complaint." McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) (internal citations and quotation marks omitted). However, the factual allegations in the complaint must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. Deerbrook Pavilion, LLC, v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c).

Because the letter is attached as an exhibit to Klutho's complaint, I may consider its terms in ruling on the motion to dismiss.

**III. Discussion**

Congress passed the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., to preserve consumer privacy in the information maintained by consumer reporting agencies. See § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"). The Act sets out certain permissible purposes for which a consumer reporting agency may release credit reports and prohibits other releases. § 1681b(a). Most of the permissible purposes involve situations where the consumer has authorized or initiated the release, but there are exceptions.

One of the exceptions allows a credit provider to access consumer information in order to make a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(I). This provision enables a credit provider such as Fourth Fleet Financial to provide certain criteria to a credit agency and then to receive – without the consumers' consent – basic contact information about consumers who meet those criteria. The exception does not allow a potential lender to access the full credit report, but instead allows it to obtain the consumer's name, address, and

other information that does not identify any particular past credit transaction of that consumer.

In creating this exception, Congress allowed lenders such as the defendant to access credit reports for the purpose of making unsolicited mailings to consumers, so long as the lender actually offered the consumer something, that is, so long as the lender made a "firm offer of credit."  As one court has noted, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process."  Cole v. U. S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004) (quoting S. Rep. No. 103-209, 13 (1993)).  "Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalog and sales pitches."  Trans Union Corp. v. FTC, 267 F.3d 1138, 1143 (D.C. Cir. 2001).

Congress, however, did not specify what, if any, credit terms had to be included for something to be a "firm offer."  The statute does not require the loan amount, interest rate, or a payback period to be stated.  Instead, the FCRA defines "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the

offer." 15 U.S.C. § 1681a(l). The statute provides that the offer may be conditioned on three specific requirements. First, the creditor may apply additional pre-selection criteria relating to the consumer's creditworthiness. § 1681a(l)(1). Second, the offer may be conditioned on verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer." § 1681a(l)(2). Finally, the firm offer may be conditioned on the consumer's furnishing any collateral that was established before the selection of the consumer for the offer and was disclosed in the offer. §1681a(l)(3). The general definition of the word "offer" under federal law does not apply in this case because Congress has specifically defined the meaning of the phrase "firm offer."

Klutho is one of several plaintiffs who have recently filed actions under the statute after receiving unsolicited mailings from companies seeking to lend them money.[1] Courts deciding whether a particular flyer fits the "firm offer of credit" exception have struggled to articulate a consistent definition or test. In other cases before me, I concluded that a firm offer of credit must have some value to a consumer that is more than nominal.[2] Both parties urge me to reconsider my

---

[1] See, e.g., MacDonald v. Nelnet, Inc., 477 F. Supp. 2d 1010 (E.D. Mo. 2007); Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882 (E.D. Mo. 2006).

[2] MacDonald, 477 F. Supp. 2d at 1013-14; Poehl, 464 F. Supp. 2d at 885-86; Klutho v. New Day Financial, LLC, No. 4:06CV1210, 2007 WL 4169429 at *4 (E.D. Mo. Nov. 21, 2007); Klutho v. Home Loan Center, Inc., No. 4:06CV1212 CDP, 2006 WL 3836389 at * 3 (E. D. Mo. Nov. 1, 2006).

decision to use this test, but I continue to believe that it is the correct one so I will apply it here.

The "some value" test comes from Cole v. U. S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004). In Cole the court held that an unsolicited mailing offering a $300 credit that could only be used to purchase a vehicle at a particular car dealership did not have any value to the consumer, and therefore was not covered by the FCRA exception.[3] The court rejected the defendant's argument that some offer of guaranteed credit – no matter how small – met the statutory definition, because that would allow anyone to access a consumer's credit report simply by offering, for example, one dollar in guaranteed credit. So, the court reasoned, there must be "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." Id. at 726. Otherwise an offer of credit would be no more than a sham, or the equivalent of an advertisement. " . . . Congress did not intend to allow access to consumer credit information 'for catalogs and sales pitches.'" Id. at 727 (quoting Trans Union, 267 F.3d at 1143). Courts must look to the entire offer and all material conditions of the credit product to make this determination. If the offer was "a guise for solicitation rather than a legitimate credit product" it

---

[3] The Cole mailer appeared to offer other things, including a $2000 limit credit card and $19,500 auto financing, but because the flyer also said that approval of those offers was not guaranteed, the Court considered only whether the $300 credit had value.

cannot be a firm offer. Id. at 728. Additionally, the court noted that terms such as interest rate, methods of computing interest, and length of repayment "may be so onerous as to deprive the offer of any appreciable value." Id.

The Seventh Circuit noted, in Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955-56 (7th Cir. 2006), that the value of an offer is an objective standard, and stated that courts should look to the four corners of the offer to determine whether it has value. More recently, in Perry v. First National Bank, 459 F.3d. 816 (7th Cir. 2006), the court found that an offer of a $250 limit credit card had sufficient value to fit the statutory exception, even though the interest rate was 18.9% and the fees would result in the consumer being billed $175 in the first monthly bill.

Several cases have interpreted Cole strictly, and have held that there can be no firm offer unless all material terms such as amount and interest rate are defined. For example, in Hernandez v. Chase Bank USA, N.A., 429 F. Supp. 2d 983 (N.D. Ill. 2006), the court found no firm offer of credit in a flyer stating that the recipient had been "pre-qualified for up to $100,000 or more" to be secured by the recipient's residence. The court held that the terms of the loan were so vague that they had no value to a consumer. The loan would only be issued depending on information to be provided by the consumer, and the terms could be changed without notice. 429 F. Supp. 2d at 988. In Murray v. E*Trade Financial Corp.,

2006 WL 2054381 (N.D. Ill. July 19, 2006), the court interpreted <u>Cole</u> to say that there is no value if the interest rate or repayment provisions are not included. <u>Id.</u> at *3. In <u>Murray v. Finance America, LLC</u>, 2006 WL 862832 (N.D. Ill. April 4, 2006), there was no firm offer where the amount of the loan, the interest rate, and length of time were not specified. <u>See</u> <u>also</u> <u>Klutho v. New Day Financial, LLC</u>, No. 4:06CV1210, 2007 WL 4169429 (E.D. Mo. Nov. 21, 2007); <u>Klutho v. Home Loan Center, Inc.</u>, No.4:06CV1212CDP, 2006 WL 3836389 (E.D. Mo. Nov. 1, 2006).

On the other hand, several courts have granted motions for summary judgment or to dismiss, finding that the firm offer of credit exception applied even in the absence of specified interest rates or other terms. In <u>Murray v. HSBC Auto Finance, Inc.</u>, 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), the court found a firm offer of credit where the flyer said the person had been pre-selected for an auto refinance loan in a minimum amount of $5000. The flyer also stated that the recipient might be able to reduce her rate by as much of 5.04%, and that percentage was based on the average rate reduction obtained by the defendant's customers. The court in <u>Bonner v. Cortrust Bank, N.A.</u>, 2006 WL 1980183 (N.D. Ind. July 12, 2006), which was decided before the Seventh Circuit's <u>Perry</u> case, considered a credit card offer similar to that in <u>Perry</u> and concluded that it met the

firm offer of credit definition.  In Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053 (N.D. Cal. 2006), a mailer offering a minimum 20-year, $15,000 line of credit with a maximum interest rate of 24% was a firm offer of credit.  See also Klutho v. GE Money Bank, No. 4:06CV1319HEA, 2007 WL 162291 (E.D. Mo. Jan. 17, 2007); Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882 (E.D. Mo. 2006).

Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms.  Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements.  If Congress had wanted the FCRA to require that loan amounts, interest rates, or payback times be specified in a "firm offer," it could have done so.  So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit."

In this case, there is no value in this offer to distinguish it from a sales pitch.  Here, all the letter contains is a statement that Klutho has been approved for "the best loan at the best possible rate."  Although the letter says that in "most cases" Fourth Fleet Financial will finance 100% of the loan on the leased vehicle, the

letter does not include a minimum loan amount or interest rates. Telling Klutho that she has been pre-approved for some kind of vehicle loan, in some amount, with the "goal" of finding "the lowest monthly payment, the best interest rate and the right payment terms" is of no more value than the car loan offer in Cole: for all Klutho could tell from the mailing, Fourth Fleet Financial might be offering her a loan of one dollar or some other nominal value. When the letter is evaluated objectively and in its entirety, it provides no basis for a consumer to regard it as an offer having any value, and there is nothing to distinguish it from any other unsolicited advertisement. Since Fourth Fleet Financial allegedly accessed Klutho's credit report to get the information it needed to send her the letter, she has stated a claim for a violation of her rights under the Fair Credit Reporting Act.

Fourth Fleet Financial next argues that proof of actual damages is a requirement for recovery under FCRA. The Seventh Circuit in Murray v. GMAC noted that a consumer receiving a solicitation in the guise of a "fair offer of credit" was entitled to seek statutory damages without proof of actual damages: "That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." 434 F.3d at 952-953. This is consistent with the plain text of the statute, which states that a plaintiff proving a willful violation may recover actual damages or statutory

damages, whichever is greater. 15 U.S.C. § 1681n(a). Accord, Bernal v. Corestar Financial Group, 2006 WL 2038195 (E.D. Wis. July 20, 2006); Bonner v. Home123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind. May 25, 2006); Hernandez, 429 F. Supp. 2d at 989; Treble v. Town & Country Credit Corp., 2006 U.S. Dist. Lexis 1835, at *3 (N.D. Ill. January 18, 2006); Murray v. New Cingular Wireless Servs., Inc., 232 F.R.D. 295, 302-03 (N.D. Ill. 2005). Therefore, I will deny Fourth Fleet Financial's motion to dismiss on this ground as well.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#9] is denied.

                                                                                    _____
                                                                                    CATHERINE D. PERRY
                                                                                    UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2007